**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**SOUTH PACIFIC ISLAND AIRSYSTEMS, INC., GEORGE WRAY, SAMOA AVIATION, INC., dba SAMOA AIR, & DOES 1-10,**
**Defendants**

High Court of American Samoa
Trial Division

CA No. 13-94

August 17, 1995

Before KRUSE, Chief Justice, and VAIVAO, Associate Judge.

Counsel:     For Plaintiff, Cherie Shelton Norman, Assistant
             Attorney General
             For Defendant South Pacific Airsystems, Inc., Togiola
             T.A. Tulafono
             For Defendant Samoa Aviation, Inc., dba Samoa Air,
             Marshall Ashley

Order Denying Motion for New Trial:     .

## INTRODUCTION

In our opinion and order, entered on June 5, 1995, we declared, among other things, that neither South Pacific Island Airways ("SPIA") nor South Pacific Island Airsystems ("Airsystems") has any remaining right, title, or interest in and to certain land ("hangar property") located at the Tafuna Airport and that the American Samoan Government ("ASG") as owner is free to negotiate with the hangar property as it sees fit. On June 15, 1995, Airsystems moved for a new trial and on June 30, 1995, ASG filed its response. The motion came regularly for hearing on August 14, 1995, but since a quorum of judges was not present, the parties instead agreed to submit the matter on the briefs filed. With the return of Associate Judge Vaivao to the territory, the matter was then taken up for consideration.

## BURDEN OF PROOF

■■■■■■  A motion for new trial or rehearing in a non jury case should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons. *Hager v. Paul Revere Life Ins. Co.*, 489 F.Supp. 317, 321 (E.D. Tenn. 1977), *aff'd without opinion,* 615 F.2d 1360 (6th Cir. 1980). The burden on the moving party is to show substantial reasons that such relief should be granted. *Id.* Also, the requirement of T.C.R.C.P. 7(b)(1), that a party must state with particularity the grounds of a motion is especially important in the case of a motion for new trial, since the purpose of requiring such a motion before an appeal is to avoid unnecessary appeals by giving the trial judge a chance to see the error of his ways. Although a motion for new trial will obviously not be as well researched as the appeal which may follow, it should put the trial judge and the opposing party on fair notice of the particular errors that will be alleged in the

appeal. *Craddick Dev. Inc. v. Craddick, supra,* 28 A.S.R.2d 167, 168 (Trial Div. 1995) *(citing Judicial Memorandum No. 2-87, 4 A.S.R. 2d 172, 174 (1987)).*

## DISCUSSION

Airsystems alleges, in its motion for new trial, that every finding and declaration in the opinion consists of either an error of fact or law. Airsystems laboriously lists 33 of the findings nearly verbatim and asserts that they are incorrect or without factual or legal basis, but does not offer any legal analysis, with appropriate authority, nor substantial reasons to support its claims. Instead, the motion merely contains a brief assertion that six of the findings are incorrect. We will address each of these.

### I. SPIA's Reasons for Assignment of Rights

Airsystems disagrees with an observation of the court's contained in footnote 1 of the opinion to the effect that SPIA transferred its rights to the hangar property to Airsystems "in apparent contemplation of inevitable SPIA bankruptcy proceedings." Airsystems claims, in its motion for new trial, that SPIA had to file bankruptcy because it lost money due to a change in FAA regulations which forced SPIA to ground aircraft. This fact, which was not in evidence at trial, has no bearing on this case. The reasons why SPIA filed bankruptcy are hardly germane to the result reached by the court. The only material fact is that SPIA did file, and as a result, the tenancy at will relationship between SPIA and ASG was effectively terminated. In the opinion, we did not attempt to explain why SPIA filed for bankruptcy, but merely stated that SPIA assigned its rights and property to Airsystems in consideration for only $10, through a Quitclaim Deed, immediately before the impending bankruptcy. Whether or not the inference contained in footnote 1 is correct has no bearing on the merits of this case and, therefore, this assignment of error provides no basis for new trial or for reconsideration.

### II. SamAir's Month to Month Lease

Airsystems disagrees with this court's finding that SamAir's five year lease for the hangar property with ASG was extended on a month to month basis upon its expiration on December 29, 1993. Airsystems claims that this finding is inconsistent with the testimony of the Attorney General, but fails to state any specific portion of the testimony or any reason why the finding is contrary to this testimony or any other evidence. We find no inconsistency. Furthermore, whether or not SamAir's current month to

172

month lease with ASG for the hangar property is an extension of the five year lease or the result of another agreement is neither here nor there for purposes of this motion. ASG and SamAir do not dispute that a month to month lease currently exists and has existed since the expiration of the five lease in 1993. Accordingly, we find that this objection is not a valid basis for a new trial or for reconsideration.

## III. Lease Renewal

Airsystems disagrees with this court's conclusion that the term "renewal" in the SPIA lease meant that a new lease had to be negotiated when the original lease terminated. Airsystems claims that the SPIA lease allowed for extension, but does not cite any provision of the lease nor any legal authority pertaining to the meaning of "renewal." As we stated in the opinion, Article II of the SPIA lease provided that the lessee could opt to "renew" the lease for an additional fifteen year term, if agreed upon by the parties three months prior to its expiration, which, under its own terms, was on June 30, 1992. Also, "where a lease uses the term 'renewal' it means that the original lease expires at its term and upon agreement of the parties, it may be renewed through the execution of a new lease." *Felder v. Hall Bros. Co.*, 235 S.W. 789, 790 (Ark. 1921) (the stipulation in a new lease to renew requires the making of a new lease, whereas one to extend does not). Airsystems failed to offer any evidence at trial that such an agreement was executed prior to the expiration of the SPIA lease or that one has been executed since. This objection is not a valid basis for a new trial or for reconsideration.

## IV. SPIA Lease

Airsystems disagrees with this court's conclusion that the SPIA lease is "invalid and ineffectual" because it was not registered or recorded with the Territorial Registrar. Airsystems claims that even though the SPIA lease was never registered or recorded, it is still valid because of a prior ruling of this court. We reiterate that in *American Samoa Government v. South Pacific Island Airways, Inc.*, CA No. 91-82, (Trial Div. 1984), this court recognized that SPIA had taken possession of the hangar property and owed $21,624.33 in unpaid rent for its use, but the court did not address the issue of whether or not the SPIA lease itself had been executed in accordance with the law. The claimed holding of CA No. 91-82 asserted by Airsystems is non-existent. The validity of the SPIA lease was not an issue before the court then as it is before us today. Since Airsystems has failed to even attempt support its contention, we find no reason to change our previous holding that the lease is "invalid and ineffectual," and merely

173

created a tenancy at will relationship between ASG and SPIA.

■ Airsystems further claims that even if the SPIA lease is invalid, ASG should be estopped from claiming a benefit from the lease since, as a party to the lease, it had an equal duty to record and register it with the Territorial Registrar. This point is puzzling since ASG is not claiming any benefit from the SPIA lease. Also, the fact remains that the lease was not recorded or registered and the legal reality of non-registration is a lease that is "invalid and ineffectual." A.S.C.A. §§ 30.0131 and 37.0120(a). For these reasons, this claim is not a valid basis for a new trial or for reconsideration.

## V. Settlement Agreement

Airsystems disagrees with this court's finding that the 1989 Settlement Agreement between ASG and SPIA "was a self serving declaration on the part of Airsystems." Airsystems claims that Arthur Ripley's testimony shows that the Settlement Agreement was properly negotiated and approved by the Attorney General. In actuality, the Settlement Agreement was only executed by Wray on behalf of himself and merely "witnessed" by Assistant Attorney General Arthur Ripley. This is what the document says, it does not purport to commit ASG to anything, and if the parol evidence was indeed contradictory, the court simply opted for the unambiguous document.

## VI. Settlement Agreement Funds

Airsystems credits the court with a finding that the funds used to pay SPIA as a result of the Settlement Agreement was a misuse of tax dollars,[1] because under the terms of the SPIA lease, SPIA was not entitled to reimbursement for the destruction of the hangar. Airsystems claims, in its motion for new trial, that the funds were not tax dollars, but were received by ASG from an insurance settlement. So what? Apart from the fact that there is no evidence on the record to support this allegation, even if the funds were derived from an insurance settlement, such funds would still remain public funds to make good public losses, not pay a private party on the basis of an "astonishing recital" that deliberately ignored prior court holdings, favorable to ASG's General Fund and, hence, the taxpayer.

---

[1] The court did not say this; rather, the court observed that the action of the Attorney General's office, in committing ASG to pay Airsystems public funds, was deferentially pro-Airsystems and anti-taxpayer.

## CONCLUSION & ORDER

Airsystem's motion for new trial or for reconsideration is denied.

It is so ordered.